## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES H. BOYCE, and CAROLE BOYCE,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **1:04cv3367** |
| | ) | |
| **MCBURNEY CORPORATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant The McBurney Corporation, Inc.'s

Motion for Summary Judgment, filed on November 10, 2005.

## FACTS[1] AND PROCEDURAL HISTORY

The defendant McBurney Corporation ("McBurney") is a Georgia corporation with its

principal place of business in Georgia. On September 10, 1973, McBurney created a proposal for

the construction of a boiler and related equipment, including a dust bin, at the Georgia Pacific

Plant in Talladega, Alabama. From 1973 to 1975, McBurney constructed the steel dust bin, with

explosion relief vents at the top of the bin to relieve an overpressure condition and prevent a fire

or explosion. At Georgia Pacific's request, McBurney added a steam smothering line to serve as

a fire suppression system. At some point during the construction of the bin, the design was

modified to include the installation of plexiglass observation windows. Originally, these

---

[1] The court notes where "facts" appear disputed.

1

windows were designed to be securely affixed with a metal frame and twelve bolts. Some time subsequent to the completion of the bin, the observation windows were modified to be affixed with wing nuts as opposed to bolts, and were used by Georgia Pacific employees not only to look inside the bin, but also to clear "bridging," an accumulation of dust which prevents the dust bin from feeding. Whether this was done with the knowledge of McBurney is disputed by the parties. McBurney specifically designed "poke holes" on the dust bin to remove bridging, but there is some evidence that those holes did not function as well as intended. In the event of a fire, Georgia Pacific employees were to pull a handle on the bin attached to the steam smothering line to snuff out the fire.

The plaintiff James H. Boyce ("Boyce") was employed as an electrician by Georgia-Pacific Corporation at its plywood manufacturing facility in Talladega, Alabama. On December 17, 2003, Ronnie Kirk ("Kirk"), a utility man at the plant, saw a spark in the dust bin, and reported it to the boiler operator, David Robinson ("Robinson"). Approximately an hour later, Boyce and Bobby McRae ("McRae"), another electrician, saw a glow in the dust bin. After concluding that there was potential fire in the dust bin, Robinson directed Boyce and McRae to throw the breaker on the air lock, which would have shut down the sander which fed the bin. Robinson then told Kirk to "put some water on [the fire]." Kirk removed the unsecured plexiglass window[2] and used a hose to "[spray] water down inside the end of [the dust bin]." Approximately two to three seconds after Kirk began spraying the dust bin, Kirk saw that the fire was getting bigger and he stepped out of the way. An explosion occurred, exiting the dust bin

_____

[2] It is disputed as to whether the window was even attached to the bin for the year prior to this accident.

through the hole created by the absence of the observation window. Boyce, walking toward the fan motor "went around the corner of the boiler building" when "this ball of fire came out of–came out towards [him], almost right in [his] face, and enveloped [him]." As a result of the accident, Boyce became totally and permanently blind in both eyes and suffered severe burns and injuries over substantial portions of his body. Boyce and his wife, Carole Boyce (collectively referred to as "the Boyces"), filed this action in the Northern District of Alabama on December 24, 2004, basing jurisdiction on 28 U.S.C. § 1332.

In Count I of the Complaint, titled "Alabama Extended Manufacturers Liability Doctrine," the Boyces allege that the defendant McBurney designed, manufactured, marketed, installed, altered and/or sold the dust bin and/or the component parts thereof. The Boyces further allege that McBurney was in the business of manufacturing, selling, producing, installing, and/or marketing dust bins and related equipment materially similar to this dust bin and/or the component parts thereof. The Boyces claim that the bin was defective in that it was unreasonably dangerous when put to its intended use, due to its faulty design and/or manufacture and/or installation, etc. The Boyces claim that this defective condition proximately caused the injuries to Boyce.

In Count II of the Complaint, titled "Negligent and/or Wanton Design, Manufacture, and/or Failure to Warn," the Boyces allege that McBurney was negligent and/or wanton in its design and manufacture of the dust bin. The Boyces further allege that McBurney was negligent per se because it failed to provide proper warnings, instructions and safety devices for the dust bin. The Boyces claim that this failure to warn was the proximate cause of Boyce's injuries.

In Count III of the Complaint, titled "Negligent and/or Wanton Installation, Inspection,

3

Maintenance, Failure to Retrofit or Warn," the Boyces allege that McBurney undertook to perform regular inspections and maintenance upon the dust bin, but negligently or wantonly failed to properly inspect or maintain the bin. The Boyces claim that McBurney "knew that the design of the Subject Equipment created an unreasonably dangerous and hazardous condition," but failed to warn and failed to retrofit the bin to reduce or eliminate the hazard. The Boyces allege that this behavior on the part of McBurney proximately caused Boyce's injuries.

In Count IV, titled "Negligence and/or Wantonness," the Boyces claim that McBurney owed a duty of reasonable care to Georgia Pacific and its employees, including Boyce. The Boyces allege that McBurney breached this duty. They claim that this breach proximately caused Boyce to be injured.

In Count V, titled "Breach of Contract," the Boyces claim that McBurney entered into a contract with Georgia Pacific to install, inspect, and maintain the dust bin at the Talladega Facility. The Boyces allege that McBurney breached this contract by negligently, wantonly, or otherwise wrongfully failing to properly design, install, inspect and/or maintain the bin. According to the Boyces, Boyce was an intentional third-party beneficiary to this contract, and McBurney's breach proximately caused Boyce to be injured. In Count VI, titled "Loss of Consortium," the Boyces allege that Carole Boyce has experienced a loss of companionship, conversation, affection, emotional support, and physical aid and comfort because of the injuries suffered by Boyce. The Boyces demand a trial by struck jury for their claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue

as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS[3]

**I.      Defendant McBurney Corporation, Inc's Motion for Summary Judgment.**

**A.      The Statute of Repose set forth in Alabama Code § 6-5-221, et seq. bars plaintiffs' claims.**

According to McBurney, Alabama law establishes an absolute bar to recovery in all civil actions against architects, engineers and builders at thirteen years from substantial completion of a project. *See* Ala. Code § 6-5-221 (1975). McBurney claims that substantial completion is defined as "[t]he time at which the construction of the improvement on or to real estate is sufficiently completed so that the owner, tenant, or other person can occupy or utilize the improvement, or a designated portion thereof, for the use for which it is intended." Ala. Code § 6-5-220 (d).

**I.      The statute of repose is applicable and more than thirteen years have passed since the substantial completion of the Talladega project.**

McBurney claims that the Alabama Legislature articulated the following statement of its express intent:

> The Legislative objective of abolishing potential liabilities of architects, engineers and builders after the passage of a sufficient period of time from the completion of their work is rationally and reasonably related to the permissible state objective of **removing responsibility from, and preventing suit against these regulated professions and builders which are least likely to be responsible or at fault for defacing deficiencies which cause injury long after their services or work is completed.** The Legislature had deemed that, after a lapse of time of more than thirteen years without incident, the burden on the courts to adjudicate, the complexities of proof with the obstacle of faded memories, and available witnesses and lost evidence, and even where evidence is available, the opportunity for intervening factors such as acts or omissions or others and adequate maintenance, and proper use, intervening operations, improvements and services and other negligence, and such changes in standards for design and construction

---

[3] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

6

and changes in building codes, and the burden on architects and engineers and builders, who have no control over the improvements after their services are completed, to disprove responsibility after acceptance and years of possession by other parties, all way [sic] more heavily in favor of repose or abolishing of rights of action against architects and engineers and builders than allowing adjudication of the few, if any, meritorious claims which might have accrued thereafter. The Legislature finds that the burden of tenuous claims upon both the courts and architects and engineers and builders efficiently vindicates the denial of a right of action after the passage of a period of thirteen years from the substantial completion of the construction of the improvement.

Ala. Code § 6-5-225 (emphasis added).

McBurney claims that "any construction of § 6-5-221 must be in accord with this express statement." *See United States v. Fisk*, 70 U.S. 445 (1865) (primary rule in construing statutes is to ascertain and give effect to legislative intention).

According to McBurney, the statute defines "engineer" as "any individual who, at the time the engineering services were performed, was legally qualified to practice engineering and held an unexpired registration as a professional engineer in the State of Alabama," or "any partnership...or corporation which, at the time the engineering services were performed, was legally qualified to practice engineering and held an unexpired certificate of authorization to practice engineering in the State of Alabama." Ala. Code § 6-5-220 (c) (1975). McBurney claims that its manager of construction, Lionel Watson ("Watson"), held an engineering license issued by the Alabama Board of Licensure for Professional Engineers and Land Surveyors from 1968 to 1990. McBurney further claims that Watson supervised and instructed William Doggette ("Doggette"), the general superintendent of the Talladega project, who physically constructed the dust bin. Doggette, according to McBurney, directly supervised the on-site superintendent of the project, Jerry Tutterow. McBurney argues that, because its employees were acting "under the instruction, control, or supervision of the registered engineer," the statute of repose is applicable

and bars all of the plaintiffs' causes of action.

McBurney asserts that a reading of the statute makes it "readily apparent" that the Alabama Legislature intended Watson's registration to invoke the statute's protections on behalf of McBurney. According to McBurney, that statute states that it is applicable to engineering corporations "legally qualified to practice in engineering" and "holding" a "certificate of authorization." McBurney points out that, prior to 1984, there was no method for "corporate" registration, and concludes that this court should construe the statute as having begun to run against McBurney at the time it ran against Watson.

McBurney asserts that other courts considering analogous situations have held similarly. McBurney cites *Brown v. M.W. Kellogg Co.*, 743 F.2d 265, 268 (5th Cir. 1984), for its holding that "[t]he contention that the [Texas statute of repose] does not apply to corporations has likewise been rejected by the Texas courts... 'We hold it was not the intention of the Legislature to exclude registered engineers operating as a corporation from the benefits of the same.'" McBurney further asserts that the statute was created precisely to bar the kinds of claims made by the Boyces here.

McBurney cites *Mitchell v. Richmond*, 754 So. 2d 627 (Ala. 1999), a case in which the plaintiff sued the architect who designed his house. Work on the house was substantially completed in 1979. In 1997, the plaintiff discovered that his home started to sink or settle because of alleged design problems of the foundation, and filed suit in 1998. The defendant moved for summary judgment based on the Alabama statute, and was challenged by the plaintiff, because Ala. Code § 6-5-223 provides that "[w]here construction was completed but no civil action accrued prior to February 25, 1994...substantial completion of construction...shall be

deemed to be February 25, 1994." In affirming the trial court's decision to grant summary

judgment to the defendant, the Alabama Supreme Court stated:

> ...[plaintiff's] interpretation of the statute does not follow the stated intent of the
> legislature:
> "It is the legislative intent and purpose to establish a single period of limitation for all
> civil actions, whether in tort, contract or otherwise, commenced against architects and
> engineers and builders, which limitation period is two years from the date the cause of
> action accrues."

*Id*. at 629-630.

McBurney argues that, like the defendant in *Mitchell*, it is entitled to summary judgment as a

matter of law.

**ii.**      **Assuming *arguendo* that Watson's registration was not sufficient to trigger
the timing provisions on behalf of McBurney, the statute of repose
nonetheless began to run in 1986.**

According to McBurney, it registered as an engineering corporation on February 19,

1986. McBurney claims that twenty-eight years have passed since the substantial completion of

the dust bin and seventeen years have passed since McBurney registered as an engineering

corporation in the state of Alabama. McBurney argues that the statute of repose began to run no

later than February 19, 1986.

**B.**      **The plaintiffs fail to establish a prima facie case under the Alabama
Extended Manufacturers Liability Doctrine.**

McBurney asserts that in 1976 the Alabama Supreme Court, in two cases, set out the

elements for the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"):

> To establish liability, a plaintiff must show:
> (1) he suffered injury or damages to himself or his property by one who sells a product in
> a defective condition unreasonably dangerous to the plaintiff as the ultimate user or
> consumer, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the

9

condition in which it was sold.

*Casrell v. Altec Industries*, 335 So. 2d 128, 132-133 (Ala. 1976); *Atkins v. American Motor Corp.*, 335 So. 2d 134 (Ala. 1976). According to McBurney, the Boyces cannot establish these requirements because, at the time of the accident, the dust bin was not in the condition in which it was sold. McBurney argues that the dust bin was substantially changed and these changes were the proximate cause of Boyce's injuries.

McBurney relies on *Morguson v. 3M Co.*, 857 So. 2d 796, 801 (Ala. 2003), in which the Alabama Supreme Court upheld a trial court's grant of summary judgment based on substantial alterations to a heart-lung machine, for its holding that:

> [w]hen a defect created by an alteration to a product after it left the seller's control is the factual and proximate cause of an injury, and the alteration was not foreseeable, the alteration amounts to an intervening and superseding cause of the injury and relieves the seller from liability under the AEMLD.

*Id*.

McBurney argues that Kirk's removal of the plexiglass window was the proximate cause of Boyce's injuries. McBurney concedes, for purposes of this motion only, that it may have adjusted the original design to allow for the observation window to be affixed with four wing nuts instead of twelve bolts, but notes that it is undisputed at the time of the accident that window was affixed with no fasteners of any kind. McBurney categorizes removal of the window and use of that window to remove bridging as unforeseeable. McBurney argues that, had the window been affixed as designed, and had the Georgia Pacific employees followed safety protocol, most notably utilizing the steam smothering system, the accident would never have occurred. McBurney cites as additional changes or alterations to the dust bin unit: relocation of the primary air fan, relocation of the check damper, removal of the steam smothering system and replacement

with a water deluge system, alteration of the collection device on top of the bin, painting over of two upper inspection ports, alteration of the safety interlocks and primary air delivery system, replacement of the boiler baghouse with an "ultrahigh efficiency cyclone," and updating of the boiler controls.

      **C.**    **Because the plaintiffs cannot prove the existence of a safer, practical alternative design, their claims of negligence and wantonness must fail.**

According to McBurney, a plaintiff must prove that a safer, practical alternative design was available to the manufacturer at the time the product was manufactured in order to prove that a product is defective under the AEMLD. *See, e.g., Beech v. Outboard Marine Corp.*, 584 So. 2d 447 (Ala. 1991). McBurney asserts that plaintiffs must prove the same to satisfy a claim for negligence or wantonness under Alabama law. *See, e.g., Richards v. Michelin*, 21 F.3d 1048 (11th Cir. 1994). McBurney argues that the Boyces have not proven such a design existed, and therefore their claims for negligence and wantonness, as well as their claim under the AEMLD, must fail. *See Elliott v. Brunswick Corp.*, 903 F.2d 1505 (11th Cir. 1990); *Connally v. Sears Roebuck and Co.*, 86 F. Supp. 2d 1133 (S.D. Ala. 1999). McBurney claims that, although the Boyces' expert claims that no injury would have occurred if the fire within the dust bin were automatically detected and suppressed, the Boyces failed to prove the existence of such a device, either now, or at the time the dust bin was designed and constructed. McBurney argues that the Boyces' claim that the injury likely would not have occurred had the inspection ports not been located on the dust bin also fails, because they do not offer a practical alternative design.

      **D.**    **Plaintiffs' failure to warn claim must fail because they have not established a duty to warn.**

McBurney claims that a plaintiff must provide evidence that a defendant breached a duty

11

and the breach proximately caused the plaintiff's injury to make a prima facie case of negligent failure to give adequate warning. *See Gurley v. American Honda Motor Co.*, 505 So. 2d 358, 361 (Ala. 1987). According to McBurney, to establish a failure-to-warn claim, a plaintiff must demonstrate at trial that: (1) the defendant was under a duty to warn the plaintiff regarding the alleged danger when the product is used in its intended or customary manner, (2) the warning the defendant provided breached that duty because it was inadequate, and (3) the breach proximately caused the plaintiff's injuries. *See Campbell v. Robert Bosch Power Tool Corp.*, 795 F. Supp. 1093, 1097 (M.D. Ala. 1992).

McBurney claims that to establish a duty to warn, the plaintiff must prove that: (1) the defendant placed the product in question on the market, (2) the product was substantially unaltered when the plaintiff used it, (3) the product was imminently dangerous when put to its intended or customary purpose, and (4) the defendant knew or should have known that the product could create a danger when used in its intended or customary manner. *See id.* According to McBurney, the dust bin was substantially altered at the time of the explosion. McBurney claims also that the dust bin, when put to its proper use, is not imminently dangerous, noting that there have been no other injuries in the almost thirty years since completion of the dust bin. McBurney further claims that the dust bin window was being improperly used, as it was never contemplated as an opening into the dust bin to fight a fire.

**E.** **Plaintiffs' failure to retrofit claim must fail because they have not established a duty to retrofit.**

According to McBurney, no court has addressed whether a duty to retrofit exists in Alabama. McBurney cites *Ostendorf v. Clark Equipment Co.*, 122 S.W. 3d 530, 534 (Ky. 2003):

12

> [t]here are two main reasons militating against a duty to retrofit. First, in many cases, a duty to retrofit is properly the province of an administrative or legislative body. Second, and more importantly, there is no reasons to create a duty to retrofit a product not defective when sold – traditional principles of negligence and strict products liability suffice.

*Id*.

McBurney claims, "in Alabama, a party injured by a product already has sufficient remedies at law without courts creating a duty to retrofit; a suit can be brought under theories of the AEMLD and negligence." McBurney argues that the plaintiffs cannot prove the existence of a duty to retrofit.

**F.** **Plaintiffs' contract claims must fail because the statute of limitation has run and there is no privity of contract.**

McBurney claims that the statute of limitation on actions regarding contracts not under seal is six years. Ala. Code § 6-2-34 (1975). McBurney argues that, since the bin was completed, any claim made concerning the quality of construction must be a warranty claim. Furthermore, McBurney claims that "Alabama cases hold that a breach-of-warranty cause of action against a contractor or architect accrues upon the completion of the building in regard to which the contractor or architect's work was done. *Mitchell v. Richmond*, 754 So. 2d 627, 629 (Ala. 1999). McBurney asserts that the dust bin was completed in 1975; hence, more than six years have passed, and the claim is barred by the statute of limitations.

According to McBurney, it is black letter law "that one that is not a party to, or in privity with, a contract cannot sue for its breach." *Airlines Reporting Corp. v. Higginbottham*, 643 So. 2d 952, 954 (Ala. 2005). McBurney cites *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 24 (Ala. 2002), for its delineation of the standard for proving a third-party claim:

> To recover under a third-party beneficiary theory, the complainant must show: 1) that the

contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached.

*Id*.

McBurney claims that the Boyces have failed to prove that any contract between McBurney and Georgia Pacific was intended to benefit Mr. Boyce, or any other Georgia Pacific employee.

### G.    The affirmative defense of product misuse bars plaintiffs' recovery.

McBurney claims that product misuse is use of a product in a way not intended or reasonably foreseen by the defendant. *General Motors Corp. v. Saint*, 646 So. 2d 564 (Ala. 1994). According to McBurney, the principles governing misuse are applicable even if the misuse is by someone other that the plaintiffs. *Kelly v. M. Trigg Enterprises, Inc.*, 605 So. 2d 1185, 1192 (Ala. 1992). McBurney argues that Kirk's removal of the observation window was the proximate cause of the accident, and McBurney could not have foreseen that the window would be removed to clear bridging or extinguish fires. Misuse of the product, according to McBurney, constitutes a valid defense under the AEMLD. *See Dennis v. American Honda Motor Co.*, 585 So. 2d 1336, 1342 (Ala. 1994).

### H.    Because loss of consortium is a derivative claim, there can be no recovery.

McBurney asserts that is "axiomatic that if Mr. Boyce can maintain no claim against McBurney, then Mrs. Boyce's claim for loss of consortium must also fail." McBurney cites: "Insofar as damages are concerned, her loss of consortium claim is independent of her husband's claim; however, as to the question whether she in fact has a claim, it is derivative. If her husband cannot sustain a claim against the...defendant, then she cannot either." *Ex parte Dyess*, 709 So. 2d 447, 448 (Ala. 1997). McBurney argues Carole Boyce's claim for loss of consortium fails

14

because Boyce can establish no valid claim.

II.     **Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.[4]**

    A.    **The Alabama statute of repose, Ala. Code § 6-5-220 (1975) *et seq.* does not bar Boyce's claims because the statute of repose for suits as to improvements to real property has not yet expired, McBurney cannot show that a licensed engineer performed the required services, and many of McBurney's actions giving rise to a duty to correct problems in the dust bin occurred within 13 years of the accident.**

The Boyces claim that Ala. Code § 6-5-221 (1975), not discussed by McBurney in its Motion for Summary Judgment, provides "in relevant part that actions against an architect, engineer, or builder relating to the construction of an improvement on or to real property must be commenced within 2 years after a cause of action 'accrues' and that no action may be brought on a cause of action that accrues or would have accrued more than 13 years after 'substantial completion of construction of the improvement.'" According to the Boyces, the Code defines the phrase "cause of action accrues or arises" as follows:

> (e) Cause of action accrues or arises. <u>The time when a person is injured</u>, including injury which results in death, or when property is damaged as a proximate result of a defect or deficiency in design, planning, testing, supervision, administration, or observation of construction of an improvement by an architect or engineer or in the construction of an improvement on or to real estate, constructed, performed, or managed by a builder; or where the damage or injury either is latent or by its nature is not discoverable in the exercise of reasonable diligence at the time of its occurrence, the claim for relief shall be deemed to arise or accrue at the time the damage or injury is or in the exercise of reasonable diligence should have been first discovered, whichever is earlier. The cause of action accrues or arises whether or not the full amount of damages is apparent at the time of the first injury or damage, and cannot be extended as a continuous wrong. Property damage shall include both physical damages to, and defective condition of, the property.

Ala. Code § 6-5-220 (e) (1975) (emphasis added).

The Boyces summarize: "[i]n short, § 6-5-221(a) creates a 13-year repose period commencing

---

    [4]In their Response, the Boyces have abandoned their claims for breach of contract and breach of warranty.

upon substantial completion of the improvement and a 2-year statute of limitation commencing upon the plaintiff's 'discovery,' actual or constructive, of any injury or damage, no matter how slight." *See Dickinson v. Land Developers Constr. Co.*, 882 So. 2d 291, 299 (Ala. 2003); *Mitchell v. Richmond*, 754 So. 2d 627, 629 (Ala. 1999).

**I.      By the plain terms of § 6-5-223, the effective date of substantial completion of this project is February 25, 1994, and Defendant misreads <u>Mitchell</u>.**

According to the Boyces, the Legislature enacted a "savings provision" into Article 13A (Ala. Code § 6-5-220, *et seq.*):

> This article shall not apply to civil causes of action in tort, contract, or otherwise, which accrued or arose prior to February 25, 1994. Where construction was completed but no civil cause of action accrued prior to February 25, 1994, this article shall apply to the construction of the improvement on or to real estate, and, for the purposes of the time limitations provided in this article, substantial completion of construction for the improvement on or to real estate shall be deemed to be February 25, 1994, but shall not revive any cause of action barred under existing law.

Ala. Code § 6-5-223 (1975).

The Boyces argue that the application of the plain language of the statute results in a determination that the cause of action in this case did not accrue until December 17, 2003, the day of the explosion. *See, e.g., Hill v. Huntsville*, 590 So. 2d 876 (Ala. 1991) ("A cause of action accrues as soon as the party in whose favor it arises is entitled to maintain an action thereon,"); *Smith v. Medtronic, Inc.*, 607 So. 2d 156, 159 (Ala. 1992) ("A party has a cause of action, and the statute of limitations begins to run, on the date the first legal injury occurs, but not necessarily from the date of the act causing the injury."). The Boyces claim that, under the plain language of § 6-5-223, the date of substantial completion of the dust bin must be deemed February 25, 1994.

The Boyces claim that McBurney's reliance on *Mitchell v. Richmond, supra*, is misplaced. The Boyces argue:

In short, *Mitchell* is distinguishable from the case *sub judice* because the former involved a suit by the homeowner for damage only to the improvement on or to his real property, whereas Plaintiff here seeks to recover for only personal injuries and also because he is not the owner of the real property. In *Mitchell*, the Court concluded that a warranty "cause of action" arose in favor of the homeowner in 1979, upon his occupancy of the house. The fact that *another* "cause of action," sounding in negligence, may have perhaps "accrued" in favor of the homeowner sometime after the enactment in 1994 based on the defendant architect's conduct was of no consequence, as it could not alter the fact that a "cause of action" had previously accrued in his favor in 1979. Here, by contrast, it cannot be said that *any* "civil cause of action" "accrued" in Plaintiff's favor regarding the subject improvement on or to real property until the moment Plaintiff suffered personal injuries in the December 2003 explosion. In other words, until the accident, no matter how wrongful the Defendant's acts or omissions relative to the dust bin, they provided Plaintiff with no "cause of action," whether in tort or contract, for which he could sue Defendant. Because "construction was completed [on the dust bin] but no civil cause of action accrued prior to February 25, 1994...[Article 13A applies] and, for the purposes of the [13-year repose statute of § 6-5-221] substantial completion of construction of the improvement on or to real estate [must] be deemed to be February 25, 1994..." § 6-5-223, Ala. Code.

Finally, the Boyces claim that § 6-5-221 on its face only applies to claims relating to the "construction" of improvements on or to real property, and none of the modifications or maintenance performed on the dust bin by McBurney is covered by the repose statute. At a minimum, the Boyces argue, a new 13-year repose period would begin running upon substantial completion of each subsequent modification or project.

### ii. The statute of repose does not bar these claims for the additional reason that McBurney was not qualified as a builder or as an engineer, as defined by the statute, at the time of construction.

According to the Boyces, the Alabama Supreme Court has stated with respect to Ala. Code § 6-5-220 *et seq.* that "a party claiming the benefits of a statute has the burden of establishing a sufficient factual basis to support invocation of the statute." *Burkes Mechanical, Inc. v. Ft. James-Pennington, Inc.*, 908 So.2d 905, 911 (Ala. 2004). The Boyces argue that, since Ala. Code § 6-5-220 (a) (1975) applies only to an architect, engineer, or builder, McBurney must

17

establish that it fits the definition of an architect, engineer, or builder. The Boyces claim that

McBurney will not be able to do this.

> a.   **The statute was designed to benefit corporations like the McBurney Stoker Equipment Company if they qualified as builders, but McBurney does not.**

The Boyces note that Section 6-5-220 (a) defines a builder as "[a]ny individual,

partnership, firm, or corporation that constructed, or performed or managed the construction of,

an improvement, or any portion thereof, on or to real estate, and at the time of the construction

was licensed as a general contractor in the State of Alabama." The Boyces claim to present

undisputed evidence that McBurney was not a licensed general contractor in Alabama at the time

of the construction of the dust bin. Furthermore, the Boyces note that Ala. Code § 6-5-220 (c)

defines an engineer as:

> Any individual who, at the time the engineering services were performed, was legally qualified to practice engineering and held an unexpired registration as a professional engineer in the State of Alabama;...; any partnership, firm, or corporation which, at the time the engineering services were performed, was legally qualified to practice engineering and held an unexpired certificate of authorization to practice engineering and held an unexpired certificate of authorization to practice engineering in the State of Alabama; and all employees or agents of the registered engineer or of his or her entity or firm acting under the instruction, control, or supervision of the registered engineer.

According to the Boyces, it is well-settled Alabama law that statutes derogating or abrogating the

common law are strictly construed. *See Baldwin v. Branch*, 888 So. 2d 482, 484-85 (Ala. 2004).

The Boyces argue that this differs from the approach in Texas, making McBurney's reliance on

*Brown v. M.W. Kellogg Co.*, 743 F.2d 265, 267 (5th Cir. 1984), misplaced, as that case

interpreted a Texas statute of repose. According to the Boyces, McBurney's argument that it

could not have become legally qualified to practice engineering until 1984 is "irrelevant." The

Boyces point out that Alabama provided mechanisms to license general contractors as early as

18

1935, and McBurney could have taken advantage of this procedure. Acts 1935, No. 297, p. 721,
§ 9.

      **b.**      **McBurney's position that it was an engineer fails legally and factually.**

      The Boyces claim that McBurney may not use its 1986 registration as an engineer to start the running of the period of repose in 1986. According to the Boyces, McBurney would have had to be an engineer "at the time engineering services were performed" as a condition for qualifying as an engineer. Ala. Code § 6-5-220 (c). The Boyces note that McBurney's proof of registration is the subject of a Motion to Exclude for failure to include in its Rule 26(a) initial disclosures or on its Witness & Exhibit List. The Boyces conclude that, since the other branches of the definition of an "engineer" in Ala. Code § 6-5-220 do not relate to corporate entities, McBurney does not qualify as an engineer under that statute.

      The Boyces argue that McBurney's argument that Sam Watson's position as an engineer within its organization qualifies McBurney as an engineer must fail. According to the Boyces, Watson was no longer designing equipment in 1973, the year the bid was put on the dust bin; McBurney claims that Gerry DeHoff designed the bin, and offers no evidence that he was an engineer. The Boyces claim that Watson had no involvement in the project, that he was simply one employee among many in the McBurney company. According to the Boyces, McBurney has the burden of establishing that it is either an engineer or a builder as defined by Ala. Code § 6-5-220, but cannot establish either, and because "all evidence" in this case shows that the plexiglass window was installed with wing nuts, all claims for negligence or liability under the AEMLD are timely.

      **iii.**      **McBurney breached multiple duties to the Plaintiff between after the initial**

**design and construction of the dust bin.**

According to the Boyces, McBurney has performed projects at the Talladega plant dozens of times since 1980. In 1987, McBurney installed bindicators to indicate the level in the bin. In 1995, McBurney replaced the PLC control computer that operated the boiler and the dust bin. These, the Boyces claim, are but a few examples. Furthermore, the Boyces argue, NFPA (National Fire Protection Association) 664 (1981) requires existing improvements be brought up to code whenever they are "rebuilt or remodeled." They characterize inclusion of the observation windows in the original manifestation of the bin as violative of code NFPA 664, which requires all hoods and enclosures be constructed entirely of welded steel. The Boyces assert that all cases cited by McBurney on the duty to retrofit issue are inapplicable to the present case because McBurney "is not a large-scale manufacturer needing to recall products from strangers."

> **B.**    **None of the modifications to the dust bin between the time of construction and the time of the accident were substantial modifications because all were reasonably foreseeable and none are the sole cause of the accident.**

The Boyces cite the Alabama Pattern Jury Instructions for a definition of "substantial change":

> A product is in substantially the same condition as when first marketed if it has not been subjected to a change that would be an independent or intervening cause of the plaintiff's injuries. An intervening cause is a cause that occurs after the marketing of the product, and such cause was not reasonably foreseeable to the defendant at the time of the marketing the product in question; and such change alone was sufficient to produce the injury complained of. If the product has not been subject to a change which was sufficient in and of itself to cause the injury complained of, or such change was or should have been reasonably foreseeable to the defendant, then such a change is not considered an intervening cause and the product would be in substantially the same condition as when first marketed.

Alabama Pattern Jury Instructions: Civil § 32.13 (2d Ed. 1993; pocket part).

The Boyces compare this case with *Sears, Roebuck and Co. v. Harris*, 630 So. 2d 1018 (Ala.

1993), in which sellers of a water heater claimed that the water heaters were substantially altered because some equipment - an instruction manual, inner and outer doors, and a draft hood - was removed. *Id.* at 1028. The Alabama Supreme Court found that the equipment was designed to be removed, and the removal of these devices was foreseeable. According to the Boyces, fires and explosions in a dust bin are foreseeable, and it was foreseeable that the observation window would be removed, as it was affixed with wing nuts. The Boyces claim that Kirk's removal of the window does not relieve McBurney of liability, because it is not an intervening cause of the accident. The Boyces assert that intervening cause must be both unforeseeable and the sole cause of the accident. *See General Motors Corp. v. Edwards*, 482 So. 2d 1176 (Ala. 1985) (overruled on other grounds by *Schwartz v. Volvo N. Am. Corp.*, 554 So. 2d 927 (Ala. 1989)). The Boyces note that McBurney's own expert testified that removal of the window was foreseeable, as it was affixed with wing nuts. Cook Depo. pp. 134-139. Furthermore, the Boyces claim, Kirk's actions were not the sole cause of the accident, as Kirk would not have removed the window if McBurney had not designed it to be removable.

C.   **Safer, practical alternative dust bin designs are glaringly obvious, and multiple witnesses have testified to their practicality.**

The Boyces offer a number of alternative designs for the bin. First, they assert that the bin could have been constructed without an observation window, and bindicators could have replaced the window's function. Second, the Boyces claim that the window could have been affixed with 12 bolts and a frame, like the other windows, and not wing nuts. Finally, the Boyces assert that automatic spark/fire suppression could have been retrofitted into the bin during its upgrades in 1987 and 1995, or its safety audit in 1992. According to the Boyces, multiple

witnesses have testified that rubber mallets and vibrating devices were used to correct bridging problems.

**D.      McBurney was under a duty to warn continuously from 1973 until the day of Boyce's injury, and a duty to retrofit to conform to applicable code.**

According to the Boyces, the Alabama State Fire Marshall adopted NFPA 664 as law in 1974. The Boyces argue that use of wing nuts in the window design, in addition to the inclusion of the window in the overall design of the bin, constituted an imminent danger. The Boyces claim that "[t]he manufacturer of a product which may be reasonably anticipated to be dangerous if used in a way which he should reasonably foresee it would be used is under a duty to exercise reasonable care to give reasonable and adequate warning of any dangers known to him, or which in the exercise of reasonable care he should have known and which the user of the product obviously could not discover." Alabama Pattern Jury Instructions: Civil § 32.07 (2d Ed. 1993); *Dunn v. Wixom Bros.*, 493 So. 2d 1356, 1360 (Ala. 1986). According to the Boyces, McBurney had a duty to warn, and its failure to warn was a continuing failure, as it visited the site and made adjustments to the bin over the years.

**E.      Georgia Pacific personnel did not misuse the dust bin because their actions were both reasonably foreseeable and intended.**

The Boyces characterize the purpose of the observation window as two-fold. First, it was to be used for observation. Second, it was to be opened to allow access to the inside of the bin. The Boyces can see no other reason to install the window with wing nuts. As employees used the window as it was intended, the dust bin was not misused.

**F.      Carole Boyce's claim for loss of consortium is viable.**

The Boyces concede that loss of consortium is a derivative claim, but contend that

22

Boyce's underlying claims are valid, so Carole Boyce's claim for loss of consortium is also valid.

**III.    McBurney's Reply.**

      **A.    The Alabama Statute of Repose bars plaintiffs' claims.**

      **I.    Plaintiff's interpretation of § 6-5-221 (a) and § 6-5-223 is wrong.**

According to McBurney, the Boyces claim that § 6-5-223 declares the starting point for the thirteen year statute of repose to be February 25, 1994, for causes of action not accrued by that date. McBurney dismisses this by claiming that if that reading is correct, the statute of repose will not bar any claim until 2007. McBurney claims that other courts have rejected such an approach to similar clauses. *See School District No. 1J, Multnomah County, Oregon v. ACandS, Inc.*, 5 F.3d 1255 (9th Cir. 1993); *Abbott v. John E. Green Co.*, 592 N.W. 2d 96 (Mich. Ct. App. 1999).

McBurney asserts that the second sentence of § 6-5-223 expressly states "where construction was completed but no civil cause of action accrued prior to February 25, 1994, this article shall apply to the construction of the improvement on or to real estate, and for the purposes of the time limitations provided in this article, substantial completion of construction of the improvement on or to real estate shall be deemed to be February 25, 1994..." Ala. Code § 6-5-223. According to McBurney, the legislature intended this date "to apply as the starting point for the two year statute of limitations for the few cases which accrued prior to the passing of the statue of repose." McBurney relies on *Baugher v. Beaver Construction Co.*, 791 So. 2d 932 (Ala. 2001). According to McBurney, in that case the defendant construction company substantially completed construction of apartments in 1979. In 1994, a fire occurred. In 1997, the plaintiffs brought suit for breach of contract and negligence/wantonness stating, "[t]he design and

construction of said apartment complex was defective in that it was not designed and built in

accordance with the building code or codes in effect at the time of the design and construction of

said complex."[5] *Baugher* Complaint. The Alabama Supreme Court affirmed summary judgment

in favor of the defendant, granted by the trial court because on a time-bar basis under § 6-5-

221(a), and used 1979, and not 1994, as the effective date of substantial completion. McBurney

quotes:

> [damages for personal injury] shall be commenced within two years next after a cause of action accrues or arises, and not thereafter. Notwithstanding the foregoing, no relief can be granted on any cause of action which accrues or would have accrued more than thirteen years after the substantial completion of construction of the improvement on or to the real property, and any right of action which accrues or would have accrued more than thirteen years thereafter is barred...

Ala. Code. § 6-5-221 (a) (1975).

### ii.     Although Ala. Code § 6-5-223 is a savings clause, plaintiffs' interpretation is incorrect.

McBurney claims that the savings clause was enacted "to provide a savings clause to

causes of action which have accrued prior to the effective date of this act." 1994 Ala. Acts 94-

138. McBurney cites *Baugher, supra*:

> Where causes of action accrue during the thirteen years from completion, an action may be brought within two years of accrual even though this extends beyond the thirteen-year period. This permits all injured parties a period of two years to file suit unless already barred because the cause of action accrues after the passage of thirteen years, which would in certain circumstances permit the filing of an action up to fifteen years.

*Id.* at 936.

According to McBurney, "[the Boyces] would have this court believe the savings clause was

intended to preserve their claims asserted *twenty eight years* after the substantial completion of

---

[5]This court calls attention to note 1 in *Baugher*. *Baugher*, however, appears to address only a constitutional issue. Further, there is the suggestion that the defendant was not a "builder" or "engineer" as defined in the statute(s).

the dust bin and *fifteen years* after the passing of the period [] of repose." McBurney claims that

the savings clause is inapplicable to the Boyces, because their tort claims had not yet accrued

when the statute of repose was enacted. *See Baugher*, 791 So. 2d at 934; *Bush v. Roche*

*Constructors, Inc.*, 817 P.2d 608 (Colo. Ct. App. 1991); *Yarbro v. Hilton Hotels Corp.*, 655 P.2d

822 (Colo. 1982); *Klein v. Catalano*, 437 N.E. 2d 514 (Mass. 1982); *Barnhouse v. City of Pinole*,

183 Cal. Rptr. 881 (Cal. Ct. App. 1982); and *Orleans Parish School Board v. Pittman*

*Construction Co, Inc.*, 372 So. 2d 717 (La. Ct. App. 1979).

### iii.    Plaintiffs' claims are barred under the alternative argument interpreting Ala. Code § 6-5-223 because a cause of action accrued prior to February 25, 1994.

McBurney claims that the Boyces abandoned their claims for breach of contract and

breach of warranty in an effort to convince this court that no cause of action accrued prior to

February 25, 1994, because the Boyces urge an interpretation of § 6-5-223 so that if no claim has

accrued prior to that date, then the statute is inapplicable to any cause of action until 2007.

However, McBurney notes, the Boyces alleged breach of contract and warranty claims in their

Complaint, both of which would have accrued upon completion of the bin in 1975. McBurney

describes the abandonment of these claims in a Response to a Motion for Summary Judgment as

"an attempt to finagle themselves into an alternative interpretation of § 6-5-223."

### iv.    A new statute of repose period does not begin running whenever McBurney performs work at the Georgia Pacific plant in Talladega.

McBurney claims that the Boyces assertion that a new thirteen-year period begins running

upon the substantial completion of any work performed by McBurney on the dust bin fails for

two reasons. First, according to McBurney, it is "inconceivable to think that the legislature

25

intended to expose McBurney to liability whenever it accepted work which even tangentially related to the subject dust bin at the Georgia Pacific Plant in Talladega." Second, McBurney asserts, McBurney only "arguably performed work on the subject dust bin in 1987," to install bindicators to indicate the level in the bin. By this time, McBurney claims, it was licensed as an engineering firm and a general contractor, so the claims are still barred by the thirteen-year statute of repose.

> **v.    McBurney was qualified as an engineer at the time of substantial completion. Accordingly, plaintiffs' claims are barred by the statute of repose.**

McBurney reasserts its argument that, as there was no mechanism for corporation to register as an engineering firm until 1984, the statute of repose should have begun to run against McBurney when it ran against Watson. *See* Ala. Code § 6-5-220 (c) (including "all employees or agents of the registered engineer or of his or her entity or firm acting under the instruction, control, or supervision of the registered engineer").

> **B.    The plaintiffs' claims are barred by the 20-year rule of repose.**

According to McBurney, Alabama has long recognized a twenty-year rule of repose. *See Rector v. Better Houses, Inc.*, 820 So. 2d 75, 77 n.2 (Ala. 2001). McBurney claims that this rule has been affirmed to apply to tort claims. *See Ex parte Liberty Nat. Life Ins. Co.*, 825 So. 2d 758, 763 (Ala. 2002). Because this rule is based solely on the passage of time, *id.*, and not upon the accrual of a claim, the repose period begins when those claims could have been asserted, McBurney claims. McBurney argues that the Boyces alleged some claims that accrued in 1975, and more than twenty years have passed since then, resulting in a barring of all of the Boyces' claims.

McBurney requests oral argument on this Motion for Summary Judgment.

## IV.   The Boyces' Sur-Reply.

According to the Boyces, McBurney's argument that a twenty-year rule of repose bars their claims was advanced neither in its Motion for Summary Judgment, nor in its brief in support thereof. Therefore, the Boyces claim that it is due to be stricken. *See United States v. Chambers*, 137 Fed. Appx. 253, n. 3 (11th Cir. 2005); *Ellingson v. Burlington Northern, Inc*., 653 F.2d 1327, 1332 (9th Cir. 1981); *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir. 1990); *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998). The Boyces argue that, even if applicable, this statute of repose begins to run when the claims could have been asserted, which is December 17, 2003, the day of the explosion at the Talladega plant.

The Boyces claim that McBurney, as the moving party, has the burden of showing no genuine issues of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If there is such a showing, the burden shifts to the nonmoving party. *Id*. The Boyces claim that they have met such a burden, if it ever was shifted to them. The Boyces argue that McBurney's evidentiary submission disputing their facts, presumably that submission attached to McBurney's Reply, should be stricken as improper and unhelpful to this court, as any factual disputes mean that a Motion for Summary Judgment is due to be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Zipperer v. City of Ft. Myers*, 41 F.3d 619, 622 (11th Cir. 1995). As an example of such an improper submission, the Boyces point to Exhibit E of McBurney's Reply, documenting its registration as a builder.

According to the Boyces, they are claiming that McBurney's work in 1987, 1992 and

27

1995 does not restart the running of the statute of repose; each instance of work was done negligently and/or wantonly, giving rise to new causes of action. Because the date of substantial construction is deemed to be 1994 by operation of law, and because McBurney was not an engineer at the time of initial construction, the statute of repose has not yet run on any of these claims. Additionally, the Boyces argue, McBurney's interpretation of the savings clause in § 6-5-223 is "nonsensical," and the language therein applies to the thirteen-year statute of repose, and not the two-year statute of limitations.

The Boyces claim that two of the cases relied on by McBurney, *ACandS* and *John E. Green Co.*, are inapplicable, because the statutes interpreted therein, unlike the Alabama statute of repose, had neither an explicit savings clause nor an explicit "deeming" (namely that it does not apply retroactively) clause. The Boyces further claim that *Mitchell*, *supra*, is inapplicable because the Boyces do not have a property interest in the bin, and they had no cause of action until the accident. According to the Boyces, *Baugher*, *supra*, is also inapplicable to the present case, because the Alabama Supreme Court did not consider the savings clause, but only addressed the issue of whether the repose period, on its face, violated the Alabama constitution. The Boyces argue that, because the issue of the savings clause was not raised, *Baugher* has no bearing on their case against McBurney.

## CONCLUSION OF THE COURT

In the absence of substantial evidence that the defendant was "licensed as a general contractor" or "held an unexpired certificate of authorization to practice engineering" in the State of Alabama at the time of the initial construction, this court cannot conclude that the statute(s) of repose are applicable. The cause of action arose when the injury occurred. The court does not

reach other issues regarding the statute(s) of repose. There presently appear to be genuine disputes of fact with regard to other issues.

The defendant's motion will be denied.

The court contemplated certifying issues relating to the statute(s) of repose to the Supreme Court of Alabama. That court, however, has been somewhat reluctant to accept certifications from district courts. In lieu of such a certification, this court will certify its order denying summary judgment pursuant to Title 28, Section 1292(b). The substantial period of time which expired between the initial construction and the accrual of the cause of action justifies such a review.

This 3rd of January, 2006.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**